Scott, J.
There can be no doubt, from the evidence in this case, that the party by whom the bill in question was discounted, was the Kentucky Trust Company Bank. This bank is located in Covington, in the State of Kentucky, and whether the contract for the discounting of the bill is to be regarded, in the light of the evidence, as made in Cincinnati, through the agency of the president of the bank, or at the bank in Covington, is, pex*haps, not very clear.
On this point, the statements of the parties to the negotiation are somewhat in conflict; and the record does not show the finding of the court upon this question of fact.
From the evidence of Mr. Sanford, the court may have found Covington to be the place of the contract; that Sanford was merely the medium of communication between Reznor and the bank; that the proposition for the discount of the bill was made to him in Cincinnati, but accepted by the bank in Covington, and that the contract was not closed until the bank signified its «acceptanee of the proposition, by entering the proceeds of the bill to the credit of Reznor upon its books. When this was done the bill was discounted, no matter when, or where, or how the proceeds were received by Reznor.
*230 Believing such a finding to be warranted by the evidence, we should not be disposed to disturb it, even had we the power to make it the subject of review.
We do not think that the questions arising in-this case are affected by the fact that the suit was brought by the indorsees of the bank, and not by the bank itself. Por if, as is claimed by the defense, the bill is made utterly void by statute, it will remain void even in the hands of a bona fide indorsee.
And being voluntarily transferred, as collateral security, merely,, for a pre-existing debt, without any new consideration, the plaintiffs-must hold it subject to any defense or equity existing at the time of the transfer. Roxborough v. Messick et al., 6 Ohio St. 448.
The principal question in the case arises, therefore, as to the validity of the contract between Reznor and the bank, under the-statute before referred to.
Regarding Covington as the place of the contract, its validity must -depend on the laws of Kentucky. Ohio statutes could have, no direct operation there, and it is not claimed that any law of Kentucky prohibited the transaction. Still, the contract will not be enforced in the courts of Ohio, if it clearly contemplated and expressly stipulated for a violation of Ohio policy. We can not be asked, from considerations of comity, to afford redress for the-breach of a contract designed to contravene our own state policy.
It is questionable whether the evidence establishes anything more than a knowledge on the part of the bank, of the use and purpose to which Reznor intended to apply the notes received on the discount of the bill. But assuming that it was stipulated, by the-agreement of the parties, that the notes should be paid out in the northern part of Ohio, in the purchase of wool, would such a stipulation contravene the policy of the act of February 24, 1848 ?
*What is the policy of this act? What was the intention of the legislature in its enactment? What were the evils to be-remedied, and the means provided for their correction ?
The act is highly penal in its character; but its prohibitions and its penalties are all directed against a particular class of persons — that is, against persons or corporations engaged in dealing in money as a business; banks, bankers, brokers, persons who receive money on deposit, or buy and sell bills of exchange, or loan money, or exchange one kind of bank bills for another with a view to-profit — all this class of persons (and no one else) are prohibited *231 from issuing, paying out, or giving in exchange for other money, so as to go into circulation in this state, any circulating notes or bills, except the notes or bills of the banks of this state, issued according to law. The design could not have been entirely to prohibit the circulation of foreign bank bills withimthis state, else the prohibition would have been general.
The act does not propose to affect the demand for, and market price of, the products of the state, by prohibiting the produce dealer from paying for them in foreign bank paper. Nor is there any restriction imposed upon the vendor as to the kind of currency to be received by him in payment.
There is no indication of'an intention to prohibit a manufacturer in Massachusetts from borrowing of banks in his own neighborhood, where he would be best known, their notes of circulation, and using the funds thus obtained, in the purchase of wool, in Ohio. The policy of such a prohibition may have been deemed questionable. But the statute would seem to have been intended, not only negatively to prohibit all persons engaged in dealing in money as a business within this state from becoming agents for the circulation of foreign bank bills, but also, positively to make use of this class of persons as an agency for collecting and returningto foreign banks their notes, which, in the ordinary transactions of business, would enter into the currency of the state; and this latter purpose it seeks to accomplish by prohibiting them from 'reissuing such notes within the state. It might reasonably be supposed that, in the course of business, the greater portion of this species of currency would soon reach the *hands of these capitalists, whose interest would lead them promptly to return it for redemption, or dispose of it elsewhere, if it could not be used in their business operations at home.
A salutary check would thus be interposed against the undue issue and circulation, within the state, of foreign paper; and the domestic currency would be left to be furnished mainly by our own banks, subject to Ohio legislative control.
The terms of the statute furnish no intimation of any further policy which it contemplates. And unless we are mistaken in this, the loan by the Kentucky Trust Company Bank,' of its notes to Reznor, to be paid out in the purchase of wool in northern Ohio, was not in contravention, evasion, or fraud of its spirit or policy.
*232 As the plaintiffs below took the bill in question subject to the equities of the defendants, we do not doubt the right of the latter to have made payment in the circulating notes of the bank. But the record does not show that the tender set up in the answer was maintained; nor that any evidence was offered on the trial tending to show the continued possession of the notes by Reznor.

Judgment affirmed.

Swan, Brinkerhoee, and Sutliee, JJ., concurred.
Bartley, C. J., did not sit in this case.